Charles E. FINCH, Plaintiff,

v.

**SECRETARY OF the DEPARTMENT OF HEALTH, EDUCATION AND WELFARE of the United States of America, Defendant.**

**No. 74 C 52 WD.**

United States District Court,
N. D. Illinois, W. D.

Nov. 11, 1975.

Patrick Sreenan, Sreenan, Beu, Vella & LaFayette, Rockford, Ill., for plaintiff.

Stanley D. Kubacki, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM DECISION

MARSHALL, District Judge.

The plaintiff brought the present action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) (1970), to obtain judicial review of a final decision by the Secretary of the Department of Health, Education, and Welfare, for denying the plaintiff's claim for disability benefits. The defendant has answered the complaint and filed a motion for summary judgment. The only question presented by the motion is whether findings of the Secretary, based on the record as a whole, are supported by substantial evidence.

To qualify for disability benefits under the Social Security Act the plaintiff must establish that he satisfied the insured status requirements of 42 U.S.C. § 423(c) (1970), and be under a disability as defined in 42 U.S.C. § 423 (1970). The latter section defines disability in the following terms:

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . .

(2) For purposes of paragraph (1)(A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of. substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

.    .    .    .    .    .

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

.    .    .    .    .    .

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

The parties agree that the last date at which the plaintiff met the insured status requirements of the Act was March 31, 1971, and therefore, to establish his claim the plaintiff must establish that he was disabled as defined by the Act on or before that date.

The plaintiff is a 48-year-old male who prior to the onset of his medical problems was a plumber and pipe-fitter. He alleges that beginning in August 1970 and continuing to the present, he has been totally and permanently disabled due to injuries sustained to his back. The record reveals that the plaintiff has a history of back problems dating back to 1963 when he was first operated on. In September 1970 he was hospitalized with complaints of low back pain radiating into the right lower extremity. Conservative treatment proved ineffective, and he underwent corrective surgery on September 9, 1970. A spinal fusion was performed from the laminal 4 to S2 on both the right and left sides with iliac bone grafts. His postoperative recovery was uneventful. His surgeon, Dr. Richards, cleared him for return to work in April 1971, but he did not obtain employment again until October 1971, at which time he began work for Pope-Morrison Co. as a pipefitter.

On October 21, 1970, the plaintiff was examined by Dr. Richards. At that time he stated that he had no significant back or leg pain. He was examined periodically by Dr. Richards over the next seven months. An examination on March 10, 1971, revealed solid fusion. And on May 21, 1971, the plaintiff was discharged after an examination. The doctor's report of that date states:

Mr. Finch was last seen on 5/20/1971. At this time, he stated, there was no significant back discomfort, although he did complain of periodic discomfort greater at night. He had no leg pain, he stated. Examination revealed full range of motion without discomfort; no spasm, no tenderness. Straight-leg raising was negative. He was discharged from my care at this time with the restriction of no lifting over 30 pounds. (Transcript 113)

On Feburary 15, 1972, some 4½ months after the plaintiff's return to work, he sustained another back injury when he tripped over a cable while carrying a machine at work. He was examined by a company doctor and provided with leg braces. He returned to work and remained on the job until sometime in March of 1972, at which time he left

Pope-Morrison because of the injury to his back. He has not worked since.

The plaintiff visited a Dr. Riordan on September 20, 1972, and has been under his care ever since. In a letter to the plaintiff's attorney, dated October 25, 1972, the doctor stated that he examined the plaintiff and that he complained of some pain in his legs and little in the hips and back, but that since he tripped on February 11, the pain had increased in his back and legs. Further examinations revealed no improvement in what the doctor diagnosed as pseudoarthrosis at the L4–5 level. Surgery to correct the damage was performed and pseudoarthrosis was found not only at the L4–5 level, but also at the L5–S1 level. The doctor stated that:

> [t]his would indicate that this patient has had pseudoarthrosis since the first surgery, and, therefore, was really disabled from this period of time and was actually working without a fusion with motion and a pseudoarthrosis which was causing him pain and the reason he never completely recovered after the first operation. (Transcript 122)

In a subsequent communication to the plaintiff's lawyer, Dr. Riordan wrote:

> In the work he was doing for the Pope-Morris Co., [sic] he apparently was doing work which was not too heavy, and while he had pain in the legs, did not have much pain in the hips or back until he had reinjured himself on February 11, 1972, and has had further pain since that time. Apparently Dr. Richards evaluated this man and thought he had no problem. However, no previous bending films had been done.
>
> It would be my *EVALUATION* of the situation that this gentleman never did obtain an adequate fusion, that he was getting along marginally with pain until this second injury of February 11, 1972, when he had further disruption of the pseudoarthrosis and instability as a result of that injury

and further disability beyond that time.

. . . . . .

> It is my *IMPRESSION* that he is totally disabled at this time, that he was totally disabled when I saw him on September 20, 1972, and as a result of the findings noted at that time and also the findings at surgery, I would feel that he was probably disabled prior to this point and actually back to the time of his surgery in September, 1970, because he did not actually ever get a fusion and had motion, and this motion which would explain the pain he had off and on since the fusion in 1970. (Transcript 5–7)

There is no question that the plaintiff is now disabled as defined by the Social Security Act. See *Hearing Decision 6*, at Transcript 19. The issue before the court is whether there is substantial evidence that the plaintiff was permanently disabled as defined by the Act on March 31, 1971, the last date at which the plaintiff satisfied the insured status requirements of the Act.

As the Government properly states, the function of the court on review of a decision of the Secretary is not to try the matter *de novo*, but determine whether, based on the record as a whole, the decision is supported by substantial evidence. *Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); .

> "The factual findings are supported by substantial evidence if the record as a whole contains relevant evidence that a reasonable mind might accept as adequate to support the conclusion. *Moon v. Celebrezze*, 340 F.2d 926 (7th Cir. 1965)." *Lahr v. Richardson*, 328 F.Supp. 996, 997 (N.D.Ill.1971), *aff'd*, 476 F.2d 1088 (7th Cir. 1973).

The court has examined the entire official record and briefs offered in support of each party's position. The conclusion reached is that the decision of the Secretary that the plaintiff was not disabled within the meaning of Section 223 is supported by substantial evidence.

**1238**

The plaintiff does have a serious back problem which dates back to 1963. And there is no question that after the operation in 1970 the plaintiff still suffered some pain and discomfort. But there is substantial evidence to support the conclusion that the plaintiff's back difficulties did not become disabling within the meaning of the Act until after the accident on February 15, 1972, almost one year after the plaintiff ceased to satisfy the insured eligibility requirements.

 Dr. Richard's reports, which were referred to earlier, state that the plaintiff had no significant pain at the time he was discharged, although he was under pain killing and muscle relaxant medication and he was prohibited from lifting heavy weights. There is also the plaintiff's own testimony that he went back to work in October 1971, and that he continued to work until sometime after he reinjured his back in February. The plaintiff argues that although he went back to work, he did so in great pain and that he missed approximately seven weeks work during the period that he was employed by Pope-Morrison. The evidence is unclear, however, on whether he missed the work on account of his back or because of work schedule of the project he was working on, or assuming he missed the work on account of his back, whether the time lost was prior to or subsequent to the injury he sustained in February. These are important questions which the plaintiff had the burden of establishing. *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

The court has also closely examined the reports filed on behalf of the plaintiff by Dr. Riordan. Some portions of the report support the plaintiff's conclusion while other portions support the conclusions of the Secretary. The court notes the observation of Dr. Riordan that no "bending films" were taken by Dr. Richards, although some dynamic films were. The court also notes that Dr. Riordan did not examine the plain-

tiff until over 18 months after he was discharged from Dr. Richards' care. Moreover, Dr. Riordan's conclusions were only "impressions" that the plaintiff was "probably" disabled from the date of the September 1970 operation. Based on the record as a whole, however, the Secretary's conclusion that the plaintiff was not disabled until February of 1972 is supported by substantial evidence. See *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973).

Therefore, the defendant's motion for summary judgment is granted and an order will enter dismissing the plaintiff's complaint.